IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       *Plaintiff*,<br>v.<br><br>TOHEED AHMED,<br><br>       *Defendant*. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO QUASH SUBPOENAS**<br><br>Case No. 2:16-cr-00021<br><br>District Judge Jill N. Parrish |

Before the Court is Alexander E. Ramos's and Adam G. Bridge's Motion to Quash Subpoenas (ECF No. 122), filed on October 24, 2017. The Government, after seeking an extension, responded on November 17, 2017. Messrs. Ramos and Bridge have not filed a reply, and the time for doing so has passed. For the reasons set forth below, the Court DENIES the motion. Messrs. Ramos and Bridge are ORDERED to appear at an evidentiary hearing on December 12, 2017, in Courtroom 8.200 at 2:00 p.m.

## I.  INTRODUCTION

This is a criminal case. Alexander E. Ramos and Adam G. Bridge served as Defendant Toheed Ahmed's counsel. Mr. Ahmed, while represented by Messrs. Ramos and Bridge, pleaded guilty to possession with intent to distribute methamphetamine. Shortly after doing so, Mr. Ahmed moved to withdraw his guilty plea. Messrs. Ramos and Bridge withdrew as counsel, and the Court appointed new counsel. Mr. Ahmed, in support of the motion to withdraw the guilty plea, testified that former counsel failed to adequately inform him as to the terms of the plea agreement. The Government has served subpoenas on Messrs. Ramos and Bridge and seeks to

elicit testimony from them to contradict Mr. Ahmed's testimony. Messrs. Ramos and Bridge have moved to quash the Government's subpoenas, claiming that their communications with Mr. Ahmed and their opinions concerning those communications are privileged and protected by the work-product doctrine. The Court disagrees.

## II. BACKGROUND

Defendant Toheed Ahmed was indicted on January 13, 2016, for possession with intent to distribute methamphetamine ("Count I") and possession with intent to distribute cocaine ("Count II"). Count I carried a maximum sentence of life with a minimum mandatory term of ten years imprisonment, and Count II carried a maximum term of twenty years imprisonment.

At his arraignment, Mr. Ahmed requested counsel, and the Court appointed Ms. Audrey James, an assistant federal public defender. Mr. Ahmed's trial was continued, and Alexander E. Ramos, another assistant federal public defender, entered an appearance on July 7, 2016. Mr. Ramos entered a substitution of counsel on August 3, 2016, replacing Ms. James. Adam G. Bridge, another federal public defender, filed an appearance of counsel on October 26, 2016.

Ms. James, as Mr. Ahmed's counsel, had filed a motion to suppress on July 7, 2016. The motion was amended twice, and the Court held an evidentiary hearing on the second amended motion to suppress on November 21, 2016. On March 23, 2017, the Court denied the motion. On April 6, 2017, Mr. Ahmed appeared before Magistrate Judge Dustin B. Pead and orally moved to appoint new counsel. The Court denied the motion, and trial was continued until May 30, 2017.

On May 10, 2017, Mr. Ahmed appeared before Judge Pead and pleaded guilty to Count I of the indictment, possession with intent to distribute methamphetamine. Mr. Ramos represented Mr. Ahmed at the hearing. The Statement in Advance of Plea provides: (1) the parties, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), stipulate to a sentence of 120 months followed by five years of supervised release; (2) the federal sentence runs concurrent with any

additional state sentence yet to be imposed by the Utah State Parole Board; (3) Mr. Ahmed preserved his right to appeal this Court's denial of his motion to suppress; and (4) the Government would move to dismiss Count II at the time of sentencing. Mr. Ahmed also agreed to waive his right to appeal the sentencing and to forfeit $7,852.00 in cash and a 2007 Infiniti vehicle.

Mr. Ahmed, through Mr. Ramos, filed a motion to withdraw his guilty plea on June 26, 2017, and a supporting memorandum on July 7, 2017. Mr. Ahmed filed a motion for a status conference on August 3, 2017, and the next day at the conference, the Court appointed him new counsel, Julie George.

On September 13, 2017, the Court held an evidentiary hearing on the motion to withdraw the guilty plea. Ms. George represented Mr. Ahmed at the hearing, the Government was represented by Cy Castle, and Messrs. Ramos and Bridge were represented by Lynn Clark Donaldson, another federal public defender.

At the hearing, Mr. Ahmed testified on direct examination and was cross examined by Mr. Castle. During direct examination, Mr. Ahmed testified as to conversations he had with Mr. Ramos concerning the terms of the plea agreement. Mr. Ahmed stated that Mr. Ramos failed to adequately inform him as to the terms of the plea agreement:

> Q: Did you have an opportunity to listen to your defense counsel reading [the plea agreement] to you?
>
> A: Yes. He only read the relevant conduct to me. He said it was the most important part of the plea agreement, and the rest was just standard procedures.

Hearing Tr. 32:6-10.

> Q: Were you given a written copy [of the plea agreement] for you to hold?
>
> A: No. [Mr. Ramos] did not provide it. He said the U.S. Marshal does not allow no paperwork back there.

Hearing Tr. 32:19-21.

> Q: So explain again for the Court . . . how were you made aware of what was in the [plea agreement]?
>
> A: [Mr. Ramos] read me the relevant conduct saying that I would be pleading guilty to 120 months, that it would run concurrent, that Judge Jill Parrish can give me credit time served.

Hearing Tr. 33:8-14.

> Q: When you entered the courtroom of Magistrate Judge Pead, did you see a written copy of the statement in advance of plea?
>
> A: No. I only saw [the signature page], which I had to sign. Well, I mean it was in front of me I should say, when I had to sign it.
>
> Q: When did you have an opportunity to fully look at the written plea agreement?
>
> A: The day I received it on June 17th.

Hearing Tr. 34:13-21.

Mr. Ahmed disclosed a number of other conversations he had with Mr. Ramos concerning the plea agreement. *See* Hearing Tr. 36:21-37:10; 37:20-38:6; 46:7-15; 47:7-15; 47:20-48:5.

At the hearing, Ms. George introduced a letter that Mr. Ramos had written to Mr. Ahmed. The letter detailed various plea deals the Government had proposed. The letter was dated March 10, 2016, but Mr. Ahmed testified that Messrs. Ramos and Bridge gave him the letter on July 14, 2017—over a month after Mr. Ahmed pleaded guilty. Hearing Tr. 54:3-21. Mr. Ahmed

4

explained that Mr. Ramos had read him the letter five days before he pleaded guilty, on May 5, 2017, but that Mr. Ramos did not leave him a copy of the letter at that time. Hearing Tr. 56:2-14. According to Mr. Ahmed, he was given the letter when he told Messrs. Ramos and Bridge that he wanted to withdraw his guilty plea. Hearing Tr. 57:21-58:9. In Mr. Ahmed's own words: "I felt Mr. Ramos misled me or induced me to believe the Judge can give me credit time served . . . [b]ecause he failed to provide me with the copies of the letter or the plea[] agreement." Hearing Tr. 60:22-61:2.

### III. ANALYSIS

Messrs. Ramos and Bridge claim that their communications with Mr. Ahmed concerning the plea agreement and their opinions as to those communications are protected by the attorney-client privilege, the work-product doctrine, and Federal Rule of Criminal Procedure 17(c)(2). The Court, however, is unconvinced. *First*, Mr. Ahmed waived his attorney-client privilege as to communications concerning the plea agreement when he voluntarily disclosed the contents of those communications in an attempt to show that his counsel was ineffective. *Second*, counsel's opinions as to the communications are not protected by the work-product doctrine because they are not the intangible equivalent of materials prepared in anticipation of litigation. *Third*, the communications are not protected by Rule 17(c)(2) because subpoenaing Messrs. Ramos and Bridge is neither unreasonable nor oppressive when Mr. Ahmed has leveled serious allegations at them in an attempt to withdraw his guilty plea.

#### A. THE ATTORNEY-CLIENT PRIVILEGE

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v United States*, 449 U.S. 383, 389 (1981). "Its purpose is to encourage full and frank communication between attorneys and their

clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.*

The attorney-client privilege protects confidential communications between a client and an attorney for the purpose of obtaining legal advice. *Fisher v. United States*, 425 U.S. 391, 403 (1976). The privilege is to be construed narrowly. *In re Grand Jury Subpoena*, 697 F.2d 277, 278 (10th Cir. 1983). And the party invoking the privilege bears the burden of establishing its applicability. *Id.* at 279.

"Because confidentiality is key to the privilege, '[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.'" *In re Qwest Commc'ns. Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quoting *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990)). In short, "[a]ny voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege." *Id.* (quoting *United States v. Bernard*, 877 F.2d 1463, 1465 (10th Cir. 1989)).

The attorney-client privilege is also waived if a "party puts his counsel's advice in issue." *United States v. Pinson*, 584 F.3d 972, 977 (10th Cir. 2009); *see also Hunt v. Blackburn*, 128 U.S. 464, 470-71 (1888) ("When Mrs. Blackburn entered upon a line of defense which involved what transpired between herself and [her lawyer], . . . she waived her right to object to his giving his own account of the matter."). Such a waiver occurs when a defendant, in an attempt to withdraw a guilty plea, claims that counsel provided erroneous advice about the consequences of the guilty plea. *United States v. Davis*, 583 F.3d 1081, 1090 (8th Cir. 2009).

*United States v. Davis* is directly on point. There, the defendant "testified about the discussions he had with his attorney when deciding whether to plead guilty" in an attempt to show that "his former attorney had given [him] erroneous advice about the consequences of the

guilty plea." *Id.* at 1089. The Eighth Circuit held that the defendant waived the attorney-client privilege in two ways. *Id.* at 1090. *First*, the defendant waived the privilege because he "voluntarily testified about his communications with his attorney." *Id. Second*, the defendant waived the privilege because he asserted that "he should be able to withdraw his guilty plea based on the erroneous advice of his appointed counsel." *Id.*

Here, Mr. Ahmed, like the defendant in *Davis*, has waived the attorney-client privilege by (1) voluntarily testifying about communications that he had with former counsel and (2) asserting that he should be able to withdraw his guilty plea based on erroneous advice of former counsel. Accordingly, the Court concludes that Mr. Ahmed has waived the attorney-client privilege with respect to all communications between himself and Messrs. Bridge and Ramos concerning his guilty plea and the plea agreement.[1]

B. **THE WORK-PRODUCT DOCTRINE**

Federal Rule of Evidence 502(g)(2) defines "work-product protection" as "the protection that applicable law provides for tangible material (or its intangible equivalent) prepared in anticipation of litigation or for trial." The work-product doctrine reflects a public policy of protecting the adversarial system. *In re Grand Jury Proceedings*, 616 F.3d at 1184. It protects society's interest in "the adversary system by shielding litigants' work-product from their opponents, and thus freeing lawyers to create such materials without fear of discovery and exploitation." *Id.* (quoting *In re Foster*, 188 F.3d 1259, 1272 (10th Cir. 1999)). The doctrine

---

[1] While Messrs. Ramos and Bridge assert that they will err on the side of asserting the attorney-client privilege and refusing to disclose, they do not argue that the attorney-client privilege is still intact with respect to communications concerning the guilty plea and the plea agreement. In short, they seem to concede that the privilege was waived and only ask the Court to find that the privilege has been waived before ordering them to testify. This, according to Messrs. Ramos and Bridge, will allow Mr. Ahmed the opportunity to pursue an interlocutory appeal. *See In re Grand Jury Proceedings*, 616 F.3d 1172, 1180 (10th Cir. 2010).

achieves this by "shelter[ing] the mental processes of the attorney, providing a privileged area within which he can *analyze and prepare his client's case*." *Id.* (emphasis added) (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)).

Here, Messrs. Ramos' and Bridges' opinions as to Mr. Ahmed's understanding of the plea agreement are not protected by the work-product doctrine. The work-product doctrine protects tangible material (or its intangible equivalent) that is *prepared in anticipation of litigation*. The mental impressions of Messrs. Ramos and Bridge formed as to Mr. Ahmed's understanding of the plea agreement are not the intangible equivalent of material prepared in anticipation of litigation. Whether Mr. Ahmed understood the plea agreement was irrelevant to trial strategy and preparation.[2] Accordingly, the Court holds that the work-product doctrine does not protect Messrs. Ramos' and Bridges' opinions as to Mr. Ahmed's understanding of the plea agreement.

C. **FEDERAL RULE OF CRIMINAL PROCEDURE 17(C)(2)**

Federal Rule of Criminal Procedure 17(c)(2) provides that "the court may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." Messrs. Ramos and Bridge contend that compelling them to testify will be unreasonable and oppressive because "[t]he government has a wealth of alternative means of defending the motion to withdraw the guilty plea."

But Messrs. Ramos and Bridge ignore the importance of their testimony. Indeed, Mr. Ahmed has leveled serious allegations at them, which, if true, would strongly support his argument that he should be allowed to withdraw his guilty plea. Calling Messrs. Ramos and

---

[2] Mr. Ramos recognizes this distinction in the letter he wrote to Mr. Ahmed. Mr. Ramos wrote: "Both Adam and I have spoken to you, either individually or together, to discuss your case. That last in-person meeting you had with Adam was Monday, May 1, 2017. At that meeting, Adam discussed *the various plea options available at that time as well as trial strategy*. Since then, you and I have had two telephone conversations. *The first involved trial strategy[,] and the second involved your desire to explore a plea deal*." (emphasis added).

8

Bridge is most likely the only way for the Government, and the Court, to discover whether Mr. Ahmed was telling the truth. Accordingly, the Court concludes that compliance with the Government's subpoena is neither unreasonable nor oppressive.

## IV. CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that communications between Mr. Ahmed and his former counsel concerning the plea agreement and former counsel's opinions regarding those communications are not protected by the attorney-client privilege or the work-product privilege. Moreover, compliance with the Government's subpoena is not unreasonable or oppressive. Accordingly, it is hereby ORDERED:

1. The Motion to Quash (ECF No. 122) is DENIED;

2. Messrs. Ramos and Bridge are ORDERED to appear at an evidentiary hearing on December 12, 2017, in Courtroom 8.200 at 2:00 p.m.; and

3. Mr. Ahmed has waived the attorney-client privilege with respect to communications concerning his guilty plea, the plea agreement, and the letter dated March 10, 2016. Messrs. Ramos and Bridge are therefore ORDERED to testify at the hearing as to these issues.

Signed December 8, 2017

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge