# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        *Plaintiff*,<br>v.<br><br>TOHEED AHMED,<br><br>        *Defendant*. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO WITHDRAW GUILTY PLEA**<br><br>Case No. 2:16-cr-00021<br><br>District Judge Jill N. Parrish |

## I.    INTRODUCTION

This is a criminal case. Toheed Ahmed pleaded guilty to possession with intent to distribute methamphetamine. After doing so, he moved to withdraw his guilty plea. Mr. Ahmed contends that his plea was not knowing and voluntary because his former counsel failed to explain to him various aspects of the plea agreement. Specifically, Mr. Ahmed claims he was led to believe that he would receive credit for time served when, in fact, he would not. The Government opposes Mr. Ahmed's motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Arrest

Mr. Ahmed was arrested on August 26, 2015, when South Salt Lake City police officers found cocaine and methamphetamine in his car. *See* Hearing Tr. 42:7–11 (Sep. 13, 2017). The State of Utah did not file new charges. *Id.* at 42:12–13. But at the time of his arrest, Mr. Ahmed was on parole from two state court convictions. *Id.* at 39:20–40:9. And Mr. Ahmed admitted to technical parole violation: not having a job, staying out past curfew, and associating with a felon.

*Id.* at 40:10–41:7, 43:17–20. Because of this, the State of Utah revoked Mr. Ahmed's parole and placed him in primary state custody. *Id.* at 40:10–13.

   2. **The Federal Indictment**

On January 13, 2016, while Mr. Ahmed was in state custody, the United States charged him with possession with intent to distribute cocaine and possession with intent to distribute methamphetamine. ECF No. 1 at 1. Because Mr. Ahmed was in state custody, this court issued a writ of habeas corpus ad prosequendum to the U.S. Marshals Service, ordering it to bring Mr. Ahmed to court for his arraignment on the pending federal charges. ECF No. 10 at 1.

Mr. Ahmed was arraigned on February 4, 2016. At the arraignment, he elected to remain in the custody of the U.S. Marshals, pursuant to the writ of habeas corpus ad prosequendum. ECF No. 23 at 1. According to Mr. Ahmed, he elected to stay in the custody of the U.S. Marshals because he believed that this would allow him to receive credit for time served: "I [wanted] to go into federal custody, you know, get my federal time started so I can get credit time served [sic]." Hearing Tr. 44:17–45:5 (Sep. 13, 2017). More precisely, Mr. Ahmed believed that the Bureau of Prisons would credit the time he spent in the custody of the U.S. Marshals to his yet-to-be-imposed federal sentence. *See id.* But he was mistaken. *Id.*

Mr. Ahmed was in the custody of the U.S. Marshals pursuant to a writ of habeas corpus ad prosequendum. And "[p]roducing a state prisoner under writ of habeas corpus ad prosequendum to answer federal charges does not relinquish state custody." *Chambers v. Holland*, 920 F. Supp. 618, 622 (M.D. Pa. 1996). As such, Mr. Ahmed remained in state primary custody, even though he was "on loan" to the U.S. Marshals. *See Sinito v. Kindt*, 954 F.2d 467, 469 (7th Cir. 1992) (per curiam) ("The issuance of the writ of habeas corpus ad prosequendum did not alter [the defendant's] custody status. It merely changed the location of his custody for the sentence he was already serving."). Because Mr. Ahmed was (and is) in primary state

2

custody based on parole violations, the Bureau of Prisons is statutorily prohibited from crediting him the time served on those violations to his yet-to-be-imposed federal sentence. *See* 18 U.S.C. § 3585(b) ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . *that has not been credited against another sentence*." (emphasis added)). In sum, the time Mr. Ahmed was (and is) serving is on account of state parole violations, and thus the Bureau of Prisons cannot credit it to a federal sentence.

At some point when he was in the custody of the U.S. Marshals, Mr. Ahmed learned that the Bureau of Prison could not credit the time he was serving to his yet-to-be-imposed federal sentence. Hearing Tr. 44:17–45:5 (Sep. 13, 2017). According to Mr. Ahmed, his attorney at the time, Audrey James, told him that "it didn't matter where [he] did the time[;] it would be up to the Judge to give [him credit for time served]." *Id.* After learning this, Mr. Ahmed filed a motion asking the court to transfer him from the custody of the U.S. Marshals back into state custody. ECF No. 23 at 1. The court granted Mr. Ahmed's motion on May 11, 2016. ECF No. 25.

### 3. The Motion to Suppress

On July 7, 2016, Mr. Ahmed filed a motion to suppress. ECF No. 30. On July 19, 2016, he amended the motion to include more detail. ECF No. 33. But on July 27, 2016, the court ordered Mr. Ahmed to refile the motion because he had not stated with particularity and in summary form a list of the issues raised as grounds for the motion. ECF No. 36 at 1 (citing D.U. Civ. R. 12-1(e)).

On August 3, 2016, Alexander Ramos entered a substitution of counsel, replacing Ms. James as counsel for Mr. Ahmed. ECF No. 37. On the same day, Mr. Ahmed filed his second amended motion to suppress. ECF No. 38. Mr. Ahmed argued that the cocaine and methamphetamine found in his car should be suppressed as the fruit of an illegal search. ECF

3

No. 38 at 3–4. Adam Bridge filed a notice of appearance as co-counsel on behalf of Mr. Ahmed on October 26, 2016. ECF No. 43.

The court held an evidentiary hearing on November 21, 2016. ECF No. 58. Two South Salt Lake City police officers testified at the hearing. ECF No. 52 at 6. The first officer testified that, on the day of the arrest, he saw Mr. Ahmed driving on the shoulder of the road. Hearing Tr. 11:25–13:18 (Nov. 21, 2016). According to the officer, Mr. Ahmed entered an intersection from the shoulder and later "swerve[d]" out of the shoulder without signaling. *Id.* at 12:21–15:7.

After observing these traffic violations (*i.e.*, improper use of lanes and changing lanes without signaling), the officer stopped Mr. Ahmed's car. *Id.* at 15:8–15. As he approached the car, the officer saw that the license plate and registration information were not visible because the license plate was "fixed high inside the license-plate bracket." *Id.* at 19:22–20:4. The officer saw Mr. Ahmed in the car with two female passengers. *Id.* at 23:11–16. As the officer moved closer, he saw one of the female passengers "dousing herself in cologne." *Id.* at 23:17–22. She then opened the back-right door and tried to exit the car. *Id.* at 23:23–24:15. The officer recognized the female passenger as a known drug user and told her to stay in the car; she complied. *Id.* at 24:6–24.

As the officer approached the driver-side widow, Mr. Ahmed rolled up the window and spoke to the two female passengers. *Id.* at 24:25–25:9. Mr. Ahmed finished the conversation and then rolled down the window to speak to the officer. *Id.* at 25:3–11. Mr. Ahmed told the officer that he had just purchased the car and he had not yet registered it. *Id.* at 25:20–26:14. Mr. Ahmed gave his license to the officer, who ran it and found that Mr. Ahmed did not have any outstanding warrants. *Id.* at 27:3–28:12. But the officer discovered that the license plate on the

4

car belonged to someone else and that Mr. Ahmed had not begun the process of registering the car. *Id.* at 28:13–16.

When the officer first made contact with the car, he had observed that one of the female passengers was not wearing a seat belt. *Id.* at 28:17–29:1. Because of this, the officer decided to issue her a citation. *Id.* at 29:2–4. When the officer asked for the female passenger's name, she gave a false name. *Id.* at 32:9–33:25. After discovering this, the officer arrested her for giving false information to a police officer. *Id.* at 33:15–34:11. It took the officer almost half an hour to determine the female passenger's actual name. *Id.* at 34:6–11.

While the first officer was trying to figure out the female passenger's identity, the second officer on the scene ran a drug dog around the car. *Id.* at 36:3–37:14. The dog alerted to the presence of drugs. *Id.* at 37:15–20. After the dog alerted, the officers searched the car. *Id.* at 38:5–7. One of the officers found drug paraphernalia in the center console. *Id.* at 38:8–18. The officer also found syringes in the front pocket of a backpack located behind the driver's seat. *Id.* at 39:4–24. In the backpack, the officer found cocaine, methamphetamine, and about $6,400 in cash. *Id.* at 40:8–41:1. After discovering the drugs, the officers arrested the occupants of the car and obtained a search warrant. *Id.* at 43:19–24. The car was towed to the South Salt Lake Police Department, and once there, one of the officers searched the trunk of the vehicle, discovering about 2,000 grams of methamphetamine. *Id.* at 43:13–44:23.

After the evidentiary hearing, the parties briefed the motion to suppress. ECF Nos. 61, 62, 66. On March 23, 3017, the court denied the motion. ECF No. 76 at 1. The court held that the traffic stop was justified at its inception and that the officers' actions were reasonably related to the circumstances justifying the stop. *Id.* Specifically, the initial stop was justified at because Mr. Ahmed committed at least two traffic violations. *Id.* The officers reasonably extended the stop

based on the license-plate and seatbelt violations. *Id.* And the officer reasonably extended the stop again when one of the female passengers gave a false name. *Id.* The dog sniff was performed during the course of the investigation and did not extend the stop. *Id.* When the dog alerted to the presence of drugs, the officers had probable cause to search the vehicle, which they did. *Id.* at 16.

### 4. The Guilty Plea

After the court denied the motion to suppress, Mr. Ahmed appeared before Magistrate Judge Dustin B. Pead for a change of plea hearing on May 10, 2017. ECF No. 97. Judge Pead asked questions to ensure that Mr. Ahmed was competent to plead guilty, that he understood the consequences of the plea, and that the plea was voluntary. Hearing Tr. 4:13–5:6 (May 10, 2017). In response to Judge Pead's questioning, Mr. Ahmed stated on the record that his counsel, Mr. Ramos, had been constitutionally effective. *Id.* at 7:20–8:12. Mr. Ahmed also stated he had reviewed the plea agreement, that he understood its contents, and that he did not need additional time to review it. *Id.* at 8:13–9:7. Mr. Ahmed also stated that he knew the maximum possible penalty and the mandatory minimum sentence for the crime to which he was pleading guilty. *Id.* at 9:8–20.

Judge Pead then discussed the plea agreement with Mr. Ahmed. Judge Pead asked Mr. Ahmed if he understood that he was pleading guilty to possession with intent to distribute methamphetamine and that the plea agreement allowed him to appeal the court's ruling on the motion to suppress. *Id.* at 9:21–10:6. Mr. Ahmed said he understood this. *Id.* Judge Pead then informed Mr. Ahmed that he was "agreeing to a specific term of imprisonment," "an exact term of 120 months." *Id.* at 11:6–15. Mr. Ahmed said he understood this. *Id.* In response to questions from Mr. Ahmed, Judge Pead informed him that the plea agreement allowed him to appeal the motion to suppress but that it would not allow him to appeal the court's decision to sentence him

6

to 120 months. *Id.* at 13:12–14:12. Mr. Ahmed said that he understood that he could not appeal the court's decision to sentence him to 120 months. *Id.* Mr. Ahmed did not ask about credit for time served. *See generally id.*

After ensuring that Mr. Ahmed understood the consequences of the plea, Judge Pead asked Mr. Ahmed for his plea. *Id.* at 19:16–21. Mr. Ahmed pleaded guilty. *Id.* After this, Judge Pead found that Mr. Ahmed was "fully competent and capable of entering an informed plea, [that] he [was] aware of the nature and charges as well as the consequences of his plea, and that the guilty plea [was] knowing and voluntary, and supported by an independent basis in fact containing each of the essential elements of the offense charged." *Id.* at 19:22–21:3. Consequently, Judge Pead stated that "[t]he plea [was] therefore accepted and the defendant [was] adjudged guilty of the offense." *Id.*

### 5. The Motion to Withdraw the Guilty Plea

After pleading guilty, Mr. Ahmed met with an officer from Probation and Pretrial Services to provide information for his presentence investigation report. Hearing Tr. 34:22–35:7 (Sep. 13, 2017). The probation officer informed him that he would not receive credit for time served because he pleaded guilty to an offense that carried a mandatory-minimum sentence of ten years. *Id.* Mr. Ahmed claims that this was the first time he learned this. *Id.* According to Mr. Ahmed, his former counsel did not explain this to him. *Id.*

After the meeting, Mr. Ahmed filed a motion to withdraw his guilty plea. ECF No. 105. Because Mr. Ahmed asserts that his former counsel was ineffective, the court appointed him new counsel, Julie George. ECF No. 114. In connection with the motion, the court held two evidentiary hearings. At the first hearing, Mr. Ahmed testified about conversations he had with his formed counsel, Messrs. Ramos and Bridge. *See* Hearing Tr. (Sep. 13, 2017). At the second

7

hearing, Messrs. Ramos and Bridge, pursuant to a court order, testified as to conversations they had with Mr. Ahmed about the plea agreement. *See* Hearing Tr. (Dec. 18, 2017).

### III. DISCUSSION

Mr. Ahmed contends that he should be allowed to withdraw his guilty plea as a matter of right under Federal Rule of Criminal Procedure 11(d)(1) because the court has not accepted the plea. In the event the court holds otherwise, Mr. Ahmed alternatively argues that he has shown a fair and just reason for withdrawal of the plea. The court is not persuaded by either argument.

#### A. WITHDRAWAL UNDER RULE 11(d)(1)

Rule 11(d)(1) allows a defendant to withdraw a guilty plea for any reason or no reason at all so long as the court has not accepted the plea. Mr. Ahmed asserts that the court never accepted his plea and thus he can withdraw it for any reason. According to Mr. Ahmed, the court deferred acceptance of his plea until sentencing. But this is a blatant misrepresentation of the record.

*United States v. Byrum*, 567 F.3d 1255 (10th Cir. 2009), is directly on point. There, the Tenth Circuit held that a defendant could not withdraw his guilty plea under Rule 11(d)(1) because the district court stated that it would "provisionally accept" the plea subject to a review of the presentence investigation report. *Id.* at 1263. "While the court's language could have been more precise, the bottom line was clear—the district court accepted [the] guilty plea as contemplated by Rule 11 subject only to its review of the [presentence investigation report]." *Id.*

The Tenth Circuit explained that there is an important distinction between the court's acceptance of a guilty plea and the court's acceptance of a plea agreement. *Id.* at 1259. Under Rule 11, a district court can accept a guilty plea but defer acceptance of the plea agreement. *Id.* The acceptance of the two need not occur at the same time. *Id.*; *United States v. Hyde*, 520 U.S.

670, 674 (1997) ("[G]uilty pleas can be accepted while plea agreements are deferred, and the acceptance of the two can be separate in time.")

Here, the court clearly accepted Mr. Ahmed's guilty plea. At the change of plea hearing, Judge Pead stated that "[t]he plea is therefore accepted and [the] defendant is now adjudged guilty of the offense." Hearing Tr. 20:6–7 (May 10, 2017).[1] Unlike *Byrum*, there is no ambiguity as to whether the court accepted Mr. Ahmed's guilty plea. Judge Pead's statement allows for only one conclusion: the court accepted the plea.

Mr. Ahmed seems to suggest that the court could not have accepted the plea until it imposed a sentence. But this argument is inconsistent with the plain language of Rule 11 and *Byrum*, a case cited extensively in Mr. Ahmed's briefing. Rule 11 "allows for the unequivocal acceptance of a plea while still reserving the district court the right to reject the underlying plea agreement." *Byrum*, 567 F.3d at 1264. That is exactly what happened here: the court accepted the guilty plea before it decided whether to accept the plea agreement. Consequently, Mr. Ahmed cannot withdraw his guilty plea under Rule 11(d)(1) because the court accepted his guilty plea.

## B. WITHDRAWAL UNDER RULE 11(d)(2)

Because the court accepted Mr. Ahmed's guilty plea, Rule 11(d)(2) applies. Under Rule 11(d)(2), a defendant may withdraw a guilty plea after the court has accepted it if there is a "fair and just reason for requesting the withdrawal." The defendant bears the burden of establishing a fair and just reason for withdrawal. *United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007). And although a defendant's motion to withdraw a plea before sentencing should be

---

[1] Counsel for Mr. Ahmed does not quote the transcript from the change of plea hearing. Based on her argument, it appears that she did not review it because she misrepresents what happened at the change of plea hearing. Specifically, she claims that "the Magistrate Judge deferred the conditionally accepted [sic] the plea until it could be addressed by this Court." The record contradicts this. The court assumes that this was an oversight, albeit an egregious one, as opposed to a knowing misrepresentation.

9

"'freely allowed and treated with liberality,' a trial court's decision on this issue is nevertheless discretionary." *United States v. Graves*, 106 F.3d 342, 343 (10th Cir. 1997) (quoting *Barker v. United States*, 579 F.2d 1219, 1223 (10th Cir. 1978)). Accordingly, the Tenth Circuit will not reverse "absent a showing that the trial court acted 'unjustly or unfairly.'" *United States v. Kramer*, 168 F.3d 1196, 1202 (10th Cir. 1999).

There are seven factors to which courts in the Tenth Circuit look when determining whether to allow the withdrawal of a guilty plea: (1) whether the defendant asserted his innocence; (2) whether the plea was knowing and voluntary; (3) whether the defendant received ineffective assistance of counsel; (4) whether the defendant delayed in filing the motion; (5) whether there would be prejudice to the Government; (6) whether there would be inconvenience to the court; and (7) whether judicial resources would be wasted. *United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993). If the first three factors, which speak to the defendant's reasons for withdrawal, weigh against the defendant, the court need not consider the remaining four factors, which speak to the potential burden on the Government and the court. *Byrum*, 567 F.3d at 1265.

Mr. Ahmed contends that he has shown a fair and just reason for withdrawal of his plea. Specifically, Mr. Ahmed contends that he believed that the plea agreement allowed him to receive credit for time served when, in fact, it did not. This misunderstanding, according to Mr. Ahmed, is the fault of his former counsel, Messrs. Ramos and Bridge. Mr. Ahmed also claims that he should be allowed to withdraw his guilty plea because he asserts his innocence.

1. **Assertion of Innocence**

Mr. Ahmed contends that he has asserted his innocence with respect to the crimes for which he is charged: possession with intent to distribute methamphetamine and possession with intent to distribute cocaine. Mr. Ahmed relies on two arguments. *First*, he contends that he will successfully appeal this court's denial of the motion to suppress, which will result in the

suppression of the evidence seized from his car—cocaine and methamphetamine. *Second*, even if the drugs are not excluded, Mr. Ahmed asserts that the drugs were not his—they belonged to either a female passenger, the prior owner of the car, or some unknown person to whom the prior owner loaned the car.

A defendant may satisfy the assertion-of-innocence factor by asserting his legal innocence. *Hamilton*, 510 F.3d at 1214. But the mere assertion of a legal defense is insufficient; the defendant must "present a *credible* claim of legal innocence." *Id.* A credible claim "'has the quality or power of inspiring belief,' and 'tends to either defeat the elements in the [G]overnment's prima facie case or make out a successful affirmative defense.'" *United States v. Marceleno*, 819 F.3d 1267, 1275 (10th Cir. 2016) *cert. denied,* 137 S. Ct. 195 (quoting *United States v. Thompson-Riviere*, 561 F.3d 345, 353 (4th Cir. 2009)). A defendant is not required to provide conclusive proof of innocence. *Id.* But the defendant needs some "concrete evidence" to make an assertion of innocence credible. *Id.* at 1274. And the court need not accept the defendant's version of the facts as true when determining whether an assertion of innocence is credible. *Id.* at 1274–75.

Here, Mr. Ahmed fails to present a credible claim of legal innocence. *First*, the court is not persuaded that its denial of Mr. Ahmed's motion to suppress will be overturned on appeal. Mr. Ahmed simply rehashes arguments that the court considered and rejected. Of course, Mr. Ahmed will be able to appeal the decision, but the court has no reason to conclude that the appeal will succeed. Perhaps this argument would be entitled to greater weight if the motion to suppress had presented a close call. But, in the court's view, it did not.

*Second*, the court is not persuaded by Mr. Ahmed's version of events. He has no "concrete evidence" that the drugs were not his. In fact, he offers no evidence at all to support

11

this claim. Instead, he offers unsupported assertions that the drugs belonged to someone else. But the court need not accept these assertions as true. *See id.* And the court is not persuaded that Mr. Ahmed's version of events is accurate. Mr. Ahmed's assertions are also undermined by the testimony that was admitted at the hearing on the motion to suppress. The court found the arresting officers' testimony credible and believes that a jury would too. Consequently, the court concludes that Mr. Ahmed has not presented a credible claim of legal innocence.

### 2. Knowing and Voluntary Plea

Mr. Ahmed argues that his plea was not knowing and voluntary. Specifically, he claims that he believed that the plea agreement allowed him to receive credit for time served when, in fact, it did not. But the evidence presented at the hearing is simply inconsistent with Mr. Ahmed's claim.

Mr. Ahmed's claim that he was confused as to whether he would receive credit for time served is based on the unique circumstances of his case. When he was arrested for the offenses charged in this case, Mr. Ahmed was on parole from two state court convictions. Hearing Tr. 39:20–40:9 (Sep. 13, 2016). After his arrest, Mr. Ahmed's parole was revoked based on technical violations and he was placed in primary state custody. *See id.* at 40:10–41:7.

Because Mr. Ahmed was in primary state custody and serving time for state parole violations, the Bureau of Prison cannot credit to his yet-to-be-imposed federal sentence any of the time he was (and is) serving. Hearing Tr. 19:12–20:13 (Dec. 18, 2017); *see also* 18 U.S.C. § 3585(b). Mr. Ahmed learned this when he was in the custody of the U.S. Marshals. Hearing Tr. 44:17–45:5 (Sep. 13, 2017). Mr. Ahmed wanted to stay in the custody of the U.S. Marshals because he thought he would earn credit for time served. *Id.* But, in Mr. Ahmed's own words, he learned that he was simply "doing state time in federal holding." *Id.* Technically, Mr. Ahmed remained in state primary custody and was simply "on loan" to the U.S. Marshals pursuant to a

12

writ of habeas corpus ad prosequendum. Mr. Ahmed's counsel at the time, Audrey James, explained to him that it would be up to the judge to give him credit for time served. *Id.* After learning this, Mr. Ahmed transferred out of the custody of the U.S. Marshals on or around May 11, 2016. *Id.*

After Ms. James withdrew as Mr. Ahmed's counsel, his new attorneys, Messrs. Ramos and Bridge, discussed the credit-for-time-served issue with Mr. Ahmed "extensively." Hearing Tr. at 87:7–16 (Dec. 18, 2017). Mr. Ramos explained to Mr. Ahmed that the Bureau of Prisons would not credit time served for state parole violations to his yet-to-be-imposed federal sentence. *Id.* at 19:12–20:13. Although Mr. Ahmed could not formally receive credit for time served, Mr. Ramos attempted to negotiate a favorable plea agreement based on the fact that Mr. Ahmed would not receive credit for time served. *Id.* at 19:12–20:13. In other words, Mr. Ramos attempted to structure a plea deal that reflected the fact that Mr. Ahmed was serving time for state parole violations. *Id.* As Mr. Ramos explained, if the Government offered a sentence of 120 months, he would try to negotiate a reduced sentence "by whatever amount of time [Mr. Ahmed] had been [in custody] up until the date of . . . sentencing." *Id.* at 20:14–21:1. So if the Government offered 120 months and Mr. Ahmed had served twenty months, Mr. Ramos "would try to get an agreement for 100 months." *Id.*

Eventually, the Government offered Mr. Ahmed two options for a plea agreement. Mr. Ramos summarized both options in a letter dated March 10, 2016. Def. Ex. 102. Although the letter is dated March 10, 2016, Mr. Ramos actually prepared the letter on May 5, 2017. Hearing Tr. at 63:8–21 (Dec. 18, 2017). On the same day he prepared the letter, Mr. Ramos hand delivered the letter to Mr. Ahmed and discussed the options with him. *Id.* at 63:22–64:13. The

Government gave Mr. Ahmed a deadline to accept either of the two deals, so Mr. Ramos wanted to make sure that Mr. Ahmed fully understood both deals before making a decision. *Id.*

The first option was a Rule 11(c)(1)(C) agreement with a stipulated ten-year sentence that would allow Mr. Ahmed to appeal the denial of his motion to suppress. Def. Ex. 102 at 2. This option "would not allow [Mr. Ahmed] to argue for credit for time already served." *Id.* The second option was a Rule 11(c)(1)(C) agreement with a stipulated ten-year sentence that would not allow Mr. Ahmed to appeal the denial of his motion to suppress. *Id.* But this option would allow Mr. Ahmed to "argue for credit for the 20+ months already served." *Id.* In sum, both options provided for a stipulated ten-year sentence, but one of the options allowed Mr. Ahmed to appeal the court's denial of the motion to suppress while the other allowed him to argue for credit for time served. *See* Hearing Tr. at 71:22–73:4 (Dec. 18, 2017).

When Mr. Ramos visited Mr. Ahmed at the prison, he brought two copies of the letter. *Id.* at 66:23–67:3. Mr. Ramos read the letter, line by line, to Mr. Ahmed and answered all of Mr. Ahmed's questions. *Id.* at 64:11–21. Mr. Ramos explained that if Mr. Ahmed accepted the first option, the ten-year sentence "would begin from the date judgment was entered in his case." *Id.* at 71:25–73:4. Mr. Ramos asked Mr. Ahmed to sign a copy of the letter to acknowledge that he understood it. *Id.* at 65:25–66:15. Mr. Ahmed refused to sign. *Id.* at 66:16–19. Nevertheless, Mr. Ramos left a copy of the letter with Mr. Ahmed. *Id.* at 66:23–67:3.[2] The same day, Mr. Ahmed called Mr. Ramos to accept the first option: the stipulated ten-year sentence that did not allow Mr. Ahmed to argue for credit for time served. *Id.* at 75:13–24.

---

[2] Mr. Ahmed testified that he never received a copy of the letter because Mr. Ramos failed to bring him a copy. Hearing Tr. 69:23–70:9 (Sep. 13, 2017). But the court does not find Mr. Ahmed's testimony credible. Mr. Ramos testified that it was his usual practice to print two copies of documents and to leave one of the copies with his clients. Hearing Tr. 66:23–67:3 (Dec. 18, 2017). Mr. Ramos also explained that his file did not have the second copy of the letter that he made, suggesting that he gave the letter to Mr. Ahmed. *Id.* at 67:8–68:4.

Despite having accepted the first option, which did not allow him to argue for credit for time served, Mr. Ahmed contends that he was misled into believing that the plea agreement allowed him to receive credit for time served. Hearing Tr. 46:2–15 (Sep. 13, 2017). Mr. Ahmed claims that he first learned that he would not receive credit for time served when he met with Probation and Pretrial Services after he pleaded guilty. *Id.* at 46:2–15. For this reason, Mr. Ahmed argues that his plea was not knowing and voluntary. But his argument is belied by the evidence.

All of the credible evidence suggests that Mr. Ahmed knowingly agreed to a mandatory minimum sentence of ten years. Judge Pead informed Mr. Ahmed of the mandatory minimum sentence, and Mr. Ahmed acknowledged in open court that he understood that he was pleading guilty to an offense that carried a mandatory minimum sentence. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). The plea agreement makes no mention of credit for time served, and Mr. Ahmed was informed by Mr. Ramos that the plea agreement would not allow him to argue for, much less receive, credit for time served. Messrs. Ramos and Bridge also discussed the concept of time served with Mr. Ahmed "extensively." In short, Mr. Ahmed's claim that he was misled to believe that he could receive credit for time served is contradicted by the record. And Mr. Ahmed's testimony to the contrary is not credible. The court therefore concludes that Mr. Ahmed understood that he would not receive credit for time served. Consequently, Mr. Ahmed fails to show that his plea was not knowing and voluntary.

3. **Ineffective Assistance of Counsel**

Mr. Ahmed claims that his former attorneys, Messrs. Ramos and Bridge, were ineffective. Specifically, Mr. Ahmed contends that they failed to inform him that he would not receive credit for time served. But this claim too is contradicted by the record. And even if

15

former counsel's performance were deficient, Mr. Ahmed has not shown that it resulted in any prejudice.

A defendant's challenge to a guilty plea based upon a claim of ineffective assistance of counsel must satisfy a two-part test. *Gordon*, 4 F.3d at 1570 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). The defendant must show (1) that counsel's performance "fell below an objective standard of reasonableness" and (2) that the "deficient performance resulted in prejudice." *Id.* (quoting *Strickland*, 466 U.S. at 688). To show prejudice in the guilty-plea context, the defendant must "establish that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and insisted on going to trial.'" *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Mr. Ahmed cannot satisfy either prong of the two-part test.

   a. *Objective Standard of Reasonableness*

Here, Mr. Ahmed has failed to show that his former counsel's performance fell below an objective standard of reasonableness. Mr. Ahmed testified that Messrs. Ramos and Bridge failed to inform him that he would not receive credit for time served. But Messrs. Ramos and Bridge credibly testified that they explained to Mr. Ahmed that he could not receive credit for time served. As discussed above, the court also finds that Mr. Ramos adequately informed Mr. Ahmed as to the terms of the plea agreement by reading it to him line by line before the change of plea hearing and by providing him with a letter summarizing the plea deals that were on the table.

Even assuming that Mr. Ahmed were actually confused as to whether he would receive credit for time served, he has not shown that it was due to a failure on the part of Messrs. Ramos and Bridge. As Mr. Bridge testified, Mr. Ahmed's confusion may have come from the fact that time served was explained to him "so often." Hearing Tr. 50:13–23 (Dec. 18, 2017). Mr. Ramos also testified that he believed that he adequately answered Mr. Ahmed's questions concerning

the plea deals offered by the Government. *Id.* at 73:5–74:25. The court finds the testimony of Messrs. Ramos and Bridge credible and concludes that former counsel's performance did not fall below an objective standard of reasonableness.

   b. *Deficient Performance Resulted in Prejudice*

Even assuming that former counsel's performance fell below an objective standard of reasonableness, Mr. Ahmed has not shown that the deficient performance resulted in prejudice. In fact, Mr. Ahmed has not even discussed prejudice in his briefing—his argument focuses entirely on what he perceives to be the deficient performance of former counsel. Mr. Ahmed does not even allege that he would have gone to trial but for his former counsel's deficient performance.[3] Consequently, even if former counsel's performance were deficient, Mr. Ahmed has not alleged, much less shown, that it was prejudicial. *See United States v. Arvantis*, 902 F.2d 489, 494 (7th Cir. 1990) (defendant failed to show ineffective assistance of counsel because he failed to allege that he would have insisted on going to trial); *Gordon*, 4 F.3d at 1571 (defendant's allegation that he would have insisted on going to trial was insufficient to establish prejudice).[4]

---

[3] The Government points this out in its opposition brief. ECF No. 134 at 13. But instead of replying to the argument, counsel for Mr. Ahmed chose not to file a reply brief and instead submitted the matter for decision.

[4] Based on the weight of the evidence against Mr. Ahmed and the potential consequences of a conviction at trial, the court is skeptical that Mr. Ahmed would have insisted on a trial. The charge to which Mr. Ahmed pleaded guilty carried a ten-year mandatory minimum and a maximum sentence of life. The second crime for which Mr. Ahmed was charged carried a maximum term of twenty years imprisonment. Mr. Ramos, in his letter dated March 10, 2016, informed Mr. Ahmed that if he were convicted at trial, his guideline sentence would likely be 360 months to life. In contrast, the plea offer he accepted required that he serve only 120 months and preserved his right to appeal the denial of his motion to suppress.

### 4. There is No Fair and Just Reason for Withdrawal

Mr. Ahmed fails to assert his innocence, demonstrate that his plea was not knowing and voluntary, or show that he received ineffective assistance of counsel. Because these three factors weigh against him, the court need not consider the final four. *Byrum*, 567 F.3d at 1265. Consequently, the court concludes that there is no fair and just reason for allowing Mr. Ahmed to withdraw his guilty plea.

## IV. CONCLUSION AND ORDER

For the reasons set forth above, Mr. Ahmed's Motion to Withdraw Guilty Plea (ECF No. 105) is DENIED. Mr. Ahmed may not withdraw his guilty plea.

Signed February 20, 2018

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge